THE NORWALK TIRE AND RUBBER COMPANY *vs.*
MANUFACTURERS' CASUALTY INSURANCE COMPANY.

Third Judicial District, New Haven, January Term, 1929.

WHEELER, C. J., HAINES, HINMAN, BANKS and JOHN RUFUS
BOOTH, Js.

Argued January 18th—decided March 2d, 1929.

*John T. Dwyer,* for the appellant (defendant).

*Edward J. Quinlan,* for the appellee (plaintiff).

BANKS, J. The appeal claims a correction of the finding in many respects, including a request that there be added to the finding all but four of the twenty-eight paragraphs of the draft-finding. A claim that the court should have found substantially the whole of the draft-finding can rarely be made in good faith and violates our rules as well as good practice. *Gallaher* v. *Southern New England Telephone Co.,* 99 Conn. 282, 290, 121 Atl. 686. There was no motion to correct the finding, and none is required when, as here, the appellant is proceeding under § 5832 of the General Statutes, but the most approved practice is to file such motion in order to apprise the trial court of the corrections desired. *Hartford-Connecticut Trust Co.* v. *Cambell,* 97 Conn. 251, 254, 116 Atl. 186. This case illustrates the desirability of following that practice. The finding, which is concise to a degree, does not contain a number of subordinate facts which are material and undisputed and which undoubtedly

the trial court would have added to the finding had a proper request to that effect been filed. In our statement of the facts we will include such facts from the draft-finding as the defendant is entitled to have incorporated in the finding in order fairly to present the questions of law upon which it relies.

The plaintiff is a corporation engaged in the business of manufacturing rubber tires, with its principal office and factory at Norwalk. For several years prior to March 1st, 1927, the plaintiff had procured substantially all its insurance of various kinds through William O. McLean, Inc., an insurance agency located in South Norwalk. On July 15th, 1926, the defendant appointed the McLean agency its agent for the purpose of writing insurance, including workmen's compensation insurance, for the territory of South Norwalk and vicinity. On March 1st, 1927, the defendant issued its policy of compensation insurance to the plaintiff through the McLean agency, the estimated premium upon which, subject to revision according to the actual payroll of the plaintiff, was $4,950. On March 17th, 1927, the plaintiff was indebted to the McLean agency upon a number of insurance contracts, including the policy written by the defendant, and was entitled to credits from the McLean agency made up of a number of items, and on that date paid the McLean agency $2,167.74 in settlement of the account between them, including the $4,950 premium upon the defendant's policy. On May 14th, 1927, the defendant cancelled the policy upon which there was at that time an unearned premium of $2,887.50. The McLean agency on May 17th gave the plaintiff a credit memorandum showing that amount due it, and in a statement of the account of the plaintiff with the McLean agency dated May 19th this item of $2,887.50 appeared as a credit against

a premium charge of $5,940 on a new compensation policy issued by the United States Casualty Company through the McLean agency. In response to a letter from the defendant dated June 7th, 1927, requesting payment of the earned premium, which had not at that time been remitted to the defendant by the Mc-Lean agency, the plaintiff wrote the defendant on June 9th, 1927, that it had paid the McLean agency the premium of $4,950 and "received from them a credit in the amount of $2,887.50 closing your account with us." The McLean agency thereafter remitted to the defendant the estimated earned premium of $2,062.50 less the agent's commission, but subsequently became insolvent, and the United States Casualty Company declined to accept this credit upon the premium upon its policy, and the plaintiff has never received the benefit of the credit for the unearned premium upon the policy issued by the defendant. The court gave judgment in favor of the plaintiff for the amount of the unearned premium with interest, less an item of $108.39 which it was agreed the plaintiff owed the defendant upon an adjustment of the premium following an audit of the plaintiff's payroll.

The facts were for the most part not in dispute, the controversy centering about the question as to whether in the handling of this insurance the McLean agency was acting as the agent of the plaintiff or the defendant. It is the contention of the defendant that the plaintiff and the McLean agency dealt with each other as principals, without regard to any of the insurance companies with which the latter had contractual relations, and the defendant disclaims liability for the repayment of the unearned premiums for two reasons. First, it claims that the payment of the premium of $4,950, in the manner in which it was paid, by a balancing of accounts between the plaintiff and the Mc-

Lean agency, was not binding upon it, since the Mc-Lean agency, under its agency contract, had no authority to accept anything but cash for the full amount of the premium, and that since, as to it, the original premium was never paid in full, the defendant cannot be held liable for a return of the unearned premium which it never received. Secondly, the defendant contends that the McLean agency was without authority from it to issue the credit memorandum for the unearned premium, and that it was in fact issued by the McLean agency in settlement of its own debt and credit account with the plaintiff, and not on behalf of the defendant.

If insurance is written in companies which the agent does not represent he is ordinarily held to be acting in the procuring of such insurance as a broker and as the agent of the insured. If it is written in companies which he represents, he is usually held to be the agent of the company and not of the insured. 32 Corpus Juris, 1053, 1054. The McLean agency was the duly appointed agent of the defendant for South Norwalk and vicinity. The trial court was justified in finding that, in handling this insurance, it was acting under its agency agreement as the agent of the defendant and not as a broker on behalf of the plaintiff, whatever may have been its relation to the plaintiff with regard to other insurance written for it in other companies.

As a general rule an insurance agent is held to be without authority to accept anything but cash in the payment of the premium upon an insurance policy. The method of payment here adopted was in all essential respects the equivalent of a cash payment of the entire amount of the premium by the plaintiff to the McLean agency. The result was precisely the same as though the plaintiff had given the McLean agency its check for $4,950, or for a larger amount including other

items of its indebtedness, and the latter had in turn given the plaintiff its check for the sum of the amounts which it owed the plaintiff. *White* v. *Connecticut Fire Ins. Co.*, 120 Mass. 330; *Pelican Assur. Co.* v. *Schildknecht*, 128 Ky. 351, 108 S. W. 312; *Huggins Candy & Cracker Co.* v. *People's Ins. Co.*, 41 Mo. App. 530. The full amount of the premium having been paid by the plaintiff to the agent of the defendant who was authorized to collect it, the defendant, upon the cancellation of the policy, became indebted to the plaintiff for the amount of the unearned premium, and the McLean agency gave the plaintiff the credit memorandum stating the amount of the credit to which the plaintiff was entitled. The authority of the McLean agency to issue the credit memorandum is not a matter of any moment. In fact the memorandum itself is not a paper of any importance and the giving of it did not in any way alter the relations of the parties. It was simply an acknowledgment of the amount of the defendant's indebtedness to the plaintiff resulting from the cancellation of the policy after the payment of the premium and before it had been fully earned. It was not a statement of the debit and credit account which existed on that day between the plaintiff and the McLean agency, but obviously a statement issued by the McLean agency, as the agent of the defendant, showing the amount owed by the latter to the plaintiff on account of the unearned premium upon the cancelled policy.

A further contention of the defendant is based upon the letter of June 9th from the plaintiff stating that it had paid the premium of $4,950 to the McLean agency on May 17th and on May 18th had "received from them a credit in the amount of $2,887.50 closing your account with us."

The claim of the defendant is that in this letter the

plaintiff accepted this credit memorandum of the Mc-
Lean agency in full settlement of its claim against the
defendant and thereby effected a novation by which
the McLean agency was substituted for the defendant
as its debtor. This is based upon the theory, upon
which the defendant's case was tried, that in the hand-
ling of its insurance the plaintiff was dealing with the
McLean agency as a broker and not as the agent of
the defendant, which, as we have said, was not the real
situation. This credit memorandum was not an in-
strument importing any obligation or promise on the
part of the McLean agency to pay the amount of the
unearned premium such that its acceptance by the
plaintiff would constitute an agreement on its part to
accept the McLean agency as its debtor in the place
of the defendant. It was, as we have seen, simply a
memorandum of the amount of credit due the plain-
tiff from the defendant for the unearned premium
upon the cancelled policy. No doubt the plaintiff
expected that it would receive credit for this amount
upon the premium charged upon the new policy writ-
ten by the United States Casualty Company through
the McLean agency, so that it considered its account
with the defendant closed. The plaintiff's letter of
June 9th, read in the light of the actual situation, can-
not fairly be held to indicate an intention to release
the defendant from its obligation to pay the unearned
premium if the matter was not adjusted through the
McLean agency in connection with the adjustment of
the premium upon the new policy. Nor is there merit
in the defendant's claim that in reliance upon this let-
ter of June 9th it was induced to seek only a remit-
tance from the McLean agency of the earned premium,
and to delay its attempt to procure a settlement from
the latter for the whole amount. It was informed by
the letter that the plaintiff had paid the full amount

of the premium to its agent and received from the latter a credit for the unearned premium upon the policy which the defendant had itself cancelled. This left it in the position of a debtor to the plaintiff for the amount of the unearned premium and this letter did not purport to discharge it from that obligation. Either the plaintiff or the defendant must suffer loss because of the failure of the defendant's agent to remit to it a premium which it had collected. There is nothing in the record which would justify the defendant's attempt to shift the responsibility for such failure to the plaintiff.

The assignments of error based upon the rulings on evidence were not pursued in the oral argument and we do not find that any of the rulings complained of were harmful to the defendant.

There is no error.

In this opinion the other judges concurred.