JOHN MAZUKIEWICZ, Respondent, *v.* THE HANOVER NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

Banks and banking — bills, notes and checks — action to recover on foreign drafts purchased from defendant bank but not paid by its foreign correspondent — when evidence does not permit finding that payment of drafts has been countermanded by defendant — when defendant entitled to notice that drafts had been dishonored by foreign correspondent.

1. Under the statute the drawer of foreign drafts or bills of exchange engages that upon due presentment the same will be accepted and paid, or both, according to the tenor, and that if they are dishonored and the necessary proceedings on dishonor are duly taken he will pay the amount thereof to the holder; but unless notice of dishonor be given to the drawer he is discharged unless the drawer has countermanded payment or he has no right to expect or require that the drawee or acceptor will honor the instrument. (Neg. Inst. Law, §§ 111, 160, 185.)

2. In an action to recover money paid the defendant as drawer of foreign drafts or bills of exchange, payment of which had been refused by the drawee, testimony of plaintiff, that when he presented the drafts for payment the drawee told him that defendant had notified him not to pay, does not permit a finding in favor of plaintiff on the question of countermand. As to the defendant this evidence was purely hearsay, the drawee not being its agent in any sense that his statements were competent as against it.

3. Nor may the plaintiff, in the absence of notice of dishonor, recover on the theory that at the time the drafts were drawn the

defendant had no funds with the drawee and might not, therefore, require their payment, where from uncontradicted evidence the only possible inference is, that at the time when the drafts should have been presented defendant had a right to expect, in view of its relations to a bank with which it had funds and of which the drawee was a correspondent, that the drafts would be honored.

*Mazukiewicz* v. *Hanover Nat. Bank*, 209 App. Div. 674, reversed.

(Argued May 6, 1925; decided June 2, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 2, 1924, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Frank C. Laughlin* and *Percy S. Dudley* for appellant. The trial court and the Appellate Division erroneously decided that the plaintiff was not required, in order to charge the defendant, to give it notice of the dishonor of the drafts. (*Amsinck* v. *Rogers*, 189 N. Y. 252; *Casper* v. *Kuhne*, 79 Misc. Rep. 411; *Robinson* v. *Ames*, 20 Johns. 146; Daniel on Neg. Inst. [6th ed.] § 1074; *Dickins* v. *Beal*, 10 Pet. 572; *Life Ins. Co.* v. *Pendleton*, 112 U. S. 696; *French* v. *Bank of Columbia*, 4 Cranch, 141; *Lafitte* v. *Slatter*, 6 Bing. 282; *Sinonoff* v. *G. C. Nat. Bank*, 279 Ill. 248; *Milbank* v. *Jones*, 141 N. Y. 340; *Griffin* v. *L. I. R. R. Co.*, 101 N. Y. 348.) There was no competent evidence that the defendant notified the drawee not to pay the drafts. (*Baldwin's Bank* v. *Smith*, 215 N. Y. 76; *Amsinck* v. *Rogers*, 189 N. Y. 252; *Carle* v. *White*, 9 Greenl. [Me.] 104; *Forbes* v. *Eldridge*, 9 Mass. 497; *People* v. *Sharf*, 217 N. Y. 204; *Matter of Case*, 214 N. Y. 199; *Matter of Burnham*, 234 N. Y. 475; *Matter of Bennett's Will*, 238 N. Y. 583; *Seeley* v. *Osborne*, 220 N. Y. 416.)

*George . N. Hamlin* and *H. W. Haldenstein* for Chase National Bank, *amicus curiæ*. The manner in which the defendant contemplated meeting the drafts was the customary manner. It, therefore, not only gave rise to a reasonable expectation that the drafts would be honored,

but also formed part of the contract between the parties. (*Beardsley Bank* v. *American Fidelity Co.*, 98 Misc. Rep. 642; *Simonoff* v. *G. C. Nat. Bank*, 279 Ill. 248; *Gravenhorst* v. *Zimmermann*, 236 N. Y. 22; *Comcl. Bank* v. *Varnum*, 49 N. Y. 269; *Strauss* v. *Quarles Corp.*, 207 N. Y. Supp. 157; *Rains* v. *Weiler*, 166 Pac. Rep. 235; *Steidtmann* v. *Lay Co.*, 234 Ill. 84; *Hostetter* v. *Park*, 137 U. S. 30; *McDonald* v. *Union Hay Co.*, [Minn.] 172 N. W. Rep. 891; *Cassin* v. *Stillman*, 185 App. Div. 63; *Rickerson* v. *Hartford Ins. Co.*, 149 N. Y. 307.)

*Edwin T. Rice* for Brown Brothers & Co. et al., *amici curiæ.* Under the provisions of the Negotiable Instruments Law, the failure to protest the drafts discharged the drawers from liability thereon. (*Cory* v. *Scott*, 3 B. & A. 619; *Bickerdike* v. *Bollman*, 1 T. R. 405; *Legge* v. *Thorpe*, 2 Camp, 310; *Rucker* v. *Hiller*, 16 East, 43; *Claridge* v. *Dalton*, 4 M. & S. 226; *Fitzgerald* v. *Williams*, 6 Bing. [N. C.] 68; *Robinson* v. *Ames*, 20 Johns. 146; *Van Want* v. *Smith*, 1 Wend. 219; *Stewart* v. *Millard*, 7 Lans. 373; *French* v. *Bank of Columbia*, 4 Cranch, 141; *Dickins* v. *Beal*, 10 Pet. 570; *L. Ins. Co.* v. *Pendleton*, 112 U. S. 696.)

*Frank M. Patterson* for Guaranty Trust Company et al., *amici curiæ.* The Negotiable Instruments Law of this State required the plaintiff, before it could charge the defendant, to give it notice of dishonor of the drafts. (*Amsinck* v. *Rogers*, 189 N. Y. 252; *Casper* v. *Kuhne*, 79 Misc. Rep. 411; *Robinson* v. *Ames*, 20 Johns. 146; Daniel on Neg. Inst. [6th ed.] § 1074; *Rucker* v. *Hiller*, 16 East, 43; *Dickins* v. *Beal*, 10 Pet. 572; *French* v. *Bank of Columbia*, 4 Cranch, 141; *Simonoff* v. *Granite City Nat. Bank*, 279 Ill. 248.)

*Joseph M. Hartfield* and *James Adam Murphy* for various banking institutions, *amici curiæ.* Defendant

had a reasonable expectation that its draft would be paid. (*Claridge* v. *Dalton*, 4 M. & S. 226; *Legge* v. *Thorpe*, 12 East, 170.)

*Joseph A. Burdeau, Robert S. Sloan* and *Joseph M. Sullivan* for respondent. The courts below properly held that plaintiff was excused from giving notice of the dishonor of the drafts. (*Burnham* v. *Spring*, 22 Me. 495; *Wood* v. *McMeans*, 23 Tex. 481; *McAleenan* v. *Mass. Bonding Co.*, 232 N. Y. 199; *Plumb* v. *Richmond Light & R. R. Co.*, 233 N. Y. 285; *Koehler* v. *Hughes*, 148 N. Y. 507; *Matter of King*, 183 N. Y. 440; *Clemens* v. *Clemens*, 37 N. Y. 59; *Berdell* v. *Allen*, 116 N. Y. 661; *Bowery Bank* v. *Gerety*, 153 N. Y. 411; *London Assurance Corporation* v. *Thompson*, 170 N. Y. 94; *Consolidated El. Storage Co.* v. *Atlantic Trust Co.*, 161 N. Y. 605; *Dannhauser* v. *Wallenstein*, 169 N. Y. 199.) The evidence offered by the plaintiff to show a countermand of payment was competent and admissible. (*Legniti* v. *M. M. Nat. Bank*, 230 N. Y. 415; *Amsinck* v. *Rogers*, 189 N. Y. 252; *Meyers* v. *Brown*, 142 App. Div. 658; *Kaufman* v. *Springer*, 17 Pac. Rep. 475; *Stecher Lith. Co.* v. *Inman*, 175 N. Y. 124; *Heuertenatte* v. *Lawrence*, 101 N. Y. 63; *Chapel* v. *Washburn*, 11 Ind. 393.)

ANDREWS, J. Having purchased from the defendant as drawer in 1914 two foreign drafts or bills of exchange aggregating 15,000 rubles the plaintiff duly presented them for payment to the drawee in Lomza, Russia, but payment was refused. No notice of dishonor of either draft was given to the defendant. The plaintiff was detained in Russia by the war and subsequently by lack of funds but he returned to New York in 1921 and in April of that year presented the original drafts to the defendant. He then asked for the money which he had paid for them but this was refused. The present action was then begun to recover that sum and at the close of the evidence, both

parties having moved for a directed verdict, the court directed a verdict for the plaintiff and the judgment subsequently entered has been unanimously affirmed by the Appellate Division. The question for us to consider is whether there is any evidence to justify the verdict so directed by the trial court.

Section 111 of the Negotiable Instruments Law (Cons. Laws, ch. 38) provides that the drawer of such instruments as are involved in this action engages that upon due presentment the same will be accepted and paid, or both according to the tenor, and if they are dishonored and the necessary proceedings on dishonor are duly taken he will pay the amount thereof to the holder. Section 160 of the same law provides that unless notice of dishonor be given to the drawer he is discharged unless it is one of the cases specified in section 185. These exceptions, so far as applicable here, are where the drawer has countermanded payment or where he has no right to expect or require that the drawee or acceptor will honor the instrument.

In his complaint the plaintiff alleges that the defendant had countermanded payment and later he was allowed to amend by alleging that at the time the drafts were drawn the defendant had no funds with the drawee.

As to the question of countermand we find no evidence that would permit a finding in favor of the plaintiff. He testifies that when the drafts were presented the drawee told him that the Hanover National Bank had notified him not to pay. As to the defendant this evidence was purely hearsay. The drawee was not the agent of the defendant in any such sense that his statements were competent as against it. (*Carle* v. *White*, 9 Me. 104; *Forbes* v. *Eldridge*, 9 Mass. 497; *Baldwin's Bank of Penn Yan* v. *Smith*, 215 N. Y. 76, 82.) Indeed, neither of the courts below seem to have placed their decision upon any such theory.

21

It is quite true that the defendant at the time it drew the drafts had no funds with the drawee. It might not, therefore, require their payment. But if it had a right to expect that they would be paid it was entitled to notice of dishonor. The uncontradicted evidence is that it was in correspondence with the Commerce Bank of Warsaw, with whom it had a sufficient balance on deposit. The bank in Lomza was in turn one of the correspondents of this latter bank. The agreement and practice was for the defendant to draw a draft directly upon such correspondents, notify the latter that the draft had been drawn, ask them to charge it against the Commerce Bank of Warsaw and the latter bank, being also notified that the draft was drawn, instructed its correspondents to honor the draft and charge it to the Warsaw bank which bank in turn charged it against the account of the Hanover National Bank with it. Following this procedure, drafts had been previously drawn on this very bank in Lomza and it seems to have been the regular course of New York banks with relation to foreign drafts and the only practicable course. They could not keep accounts with banks in each of the smaller foreign towns and if all they could do would be to draw upon the central banks in each country, business transactions would be impeded. In view of this uncontradicted evidence the only possible inference is that the defendant had a right to expect that these drafts would be paid when presented and that is sufficient. (*Robinson* v. *Ames*, 20 Johns. 146; *Rucker* v. *Hiller*, 16 East, 43; *Knickerbocker Life Insurance Company* v. *Pendleton*, 112 U. S. 696; *Simonoff* v. *Granite City National Bank*, 279 Ill. 248.) It, therefore, was entitled to notice of dishonor.

The judgments appealed from must be reversed and, as it is possible that upon a new trial the plaintiff may show by competent evidence that payment was countermanded, a new trial must be granted, with costs to abide the event.

CRANE, J. (dissenting). The bank at Lomza, Russia, was the agent of the defendant; the first communication to pay the plaintiff was from the defendant to this bank in Lomza. The refusal of the agent in Lomza to pay the plaintiff and the statements of the reason for its refusal that payment had been countermanded by the defendant were competent evidence in my judgment, and sufficient to make the defendant liable; that is, as the defendant through its agent had refused to pay, notice of non-payment was unnecessary.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN and LEHMAN, JJ., concur with ANDREWS, J.; CRANE, J., dissents in memorandum; POUND, J., absent.

Judgments reversed, etc.